Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Oficina de Ética Gubernamental<br><br>Recurrida<br><br><br>vs.<br><br><br>Enrique H. Questell Alvarado<br><br>Recurrente | KLRA202500308 | **REVISIÓN ADMINISTRATIVA** procedente de Oficina de Ética Gubernamental<br><br>Caso Núm.: 23-40<br><br>Sobre: Violación al Art. 4.2, incisos (B) y (R), de la Ley Orgánica de la Ofic. de Ética Gubernamental de P.R., Ley 1-2012, según enmendada |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de julio de 2025.

Comparece ante nos el señor Enrique H. Questell Alvarado (en adelante, Sr. Questell Alvarado o recurrente) y nos solicita la revocación de la "Resolución" emitida el 31 de marzo de 2025,[1] por la Oficina de Ética Gubernamental (en lo sucesivo, OEG o recurrida). Mediante dicho dictamen la OEG determinó que el recurrente violentó los incisos (b) y (r) del Art. 4.2 de la Ley de Ética Gubernamental de Puerto Rico, *infra*, y le impuso el pago de una suma global de $51,308.80 en concepto de multa administrativa y sanción de restitución.

Examinada la solicitud de autos, la totalidad del expediente y el derecho aplicable se modifica en parte y se revoca en parte el dictamen recurrido, por los fundamentos que expondremos a continuación.

**I.**

El 25 de abril de 2023, la OEG radicó una "Querella" contra el Sr. Questell Álvarado, ex alcalde del municipio de Santa Isabel,

---

[1] Notificada el 1 de abril de 2025.

Número Identificador

SEN2025 _____

por violentar los incisos (b) y (r) del Art. 4.2 de la Ley Núm. 1-2012, mejor conocida como Ley de Ética Gubernamental de Puerto Rico, según enmendada. En síntesis, alegó que el recurrente utilizó sus facultades para designar a la señora Carmen R. Rivera Torres (en adelante, Sra. Rivera Torres) como Directora Interina del Departamento de Finanzas, aun cuando ella incumplía con los requisitos académicos y experiencia laboral requeridos para ocupar el puesto. Arguyó, además, que debido a lo anterior el municipio pagó un diferencial como remuneración que no estaba permitido por ley. Por estos motivos, la OEG peticionó la restitución del dinero pagado en concepto de diferencial ($47,308.80), así como la imposición de la sanción administrativa correspondiente. Por su parte, el 8 de mayo de 2023, el Sr. Questell Alvarado presentó su "Contestación a Querella" en la que negó la mayoría de las alegaciones levantadas en su contra.

La OEG también presentó una querella, caso núm. 23-41, contra la Sra. Rivera Torres por los mismos hechos.[2] Empero, a diferencia del recurrente, a la Sra. Rivera Torres se le imputó la infracción de los incisos (b) y (o) del Art. 4.2 de la misma ley.[3] En vista de lo anterior, el 7 de diciembre de 2023, el Sr. Questell Alvarado solicitó la consolidación de ambos casos.[4] Sin embargo, mediante "Orden" emitida el 9 de enero de 2024, la agencia recurrida declaró No Ha Lugar la petición incoada.[5]

Continuado ambos procedimientos de manera paralela, el 10 de octubre de 2024 la agencia resolvió el caso núm. 23-41 correspondiente a la Sra. Rivera Torres. En dicho procedimiento,

---

[2] Aunque del expediente no surge copia de la querella del caso núm. 23-41, así lo reconoce la propia agencia en la "Resolución" recurrida.

[3] El texto del inciso (o) del Art. 4.2 de la Ley de Ética Gubernamental de Puerto Rico, *supra*, prohíbe lo siguiente:
> *(o) Un servidor público no puede usurpar un cargo o encomienda, para el que no ha sido nombrado o designado, ni ejercerlo sin poseer las debidas calificaciones.*

[4] A pesar de que la solicitud de consolidación no surge del expediente, consta en la "Resolución" recurrida.

[5] Aun cuando esta orden no surge del expediente, este hecho se desprende de la "Resolución" recurrida.

determinó que la funcionaria, designada para ocupar de forma interina el cargo de Directora del Departamento de Finanzas, podía ejercer efectivamente sus funciones porque "la persona que se nombre a un puesto de manera interina no tiene que cumplir con las cualificaciones que requiere el cargo".[6]  A tenor, la querella presentada en el caso núm. 23-41 contra la Sra. Rivera Torres fue archivada.

Retornando al tracto procesal del caso de epígrafe, el 26 de enero de 2024, el recurrente radicó una "Moción en Solicitud de Resolución Sumaria" y argumentó, en lo pertinente: (1) que el interinato de la Sra. Rivera Torres era legal y, por tanto, el pago del diferencial era procedente en derecho; y (2) no se cumplen los elementos de los incisos (b) y (r) del Art. 4.2 de la Ley de Ética Gubernamental de Puerto Rico, *supra.*

Por otro lado, el 5 de febrero de 2024, la OEG presentó una "Moción Solicitando Adjudicación Sumaria" en la que reiteró que, acorde a las estipulaciones y prueba documental del caso, quedó claro que el recurrente designó a la Sra. Rivera Torres en contravención a la ley.  Al igual que su contraparte, sostuvo que no hay controversias sobre hechos materiales, por ende, la disputa es de estricto derecho.

Evaluados los escritos de ambas partes, el 31 de marzo de 2025,[7] la OEG emitió la "Resolución" recurrida, mediante la cual determinó que el Sr. Questell Alvarado violentó los incisos (b) y (r) del Art. 4.2 de la Ley de Ética Gubernamental de Puerto Rico, *supra.*

En cuanto al inciso (b) de la susodicha legislación, la parte recurrida concluyó que se cumplieron todos los elementos para que se configurase la infracción al inciso, a saber: (1) que el sujeto

---

[6] Véase, recurso de "Revisión Judicial" a la pág. 9. La OEG también reconoce este hecho en su alegato, véase "Alegato en Oposición a Revisión Judicial", a la pág. 9.
[7] Notificada el 1 de abril de 2025.

activo, entiéndase el Sr. Questell Alvarado, como servidor público, (2) utilizó su deber de nombrar un Director o Directora de la Oficina de Finanzas del Municipio, (3) para obtener, a favor de la Sra. Rivera Torres, (4) el pago de un diferencial, que era improcedente en derecho toda vez que quedó probado que la Sra. Rivera Torres no poseía un bachillerato en administración de empresas —según requerido por la ley y reglamentación aplicable— sino uno en el campo de las artes.

La OEG, igualmente, dictaminó que se configuró una infracción al inciso (r) del Art. 4.2 de la Ley de Ética Gubernamental de Puerto Rico, *supra*, por cumplirse todos los requisitos para ello, es decir, se probó que: 1) el Sr. Questell Alvarado, obrando como servidor público, 2) contravino su deber de hacer cumplir las leyes y reglamentos, 3) al desembolsar indebidamente fondos públicos, entiéndase, el diferencial.

A tenor, le impuso el pago de $47,308.80 en concepto de pena de restitución correspondiente al diferencial devengado, y $2,000.00 de multa administrativa por cada uno de los incisos infringidos, para un total de $4,000.00.

Inconforme, el 15 de abril de 2025, el Sr. Questell Alvarado presentó una "Moción en Solicitud de Reconsideración" en la que enfatizó los argumentos previamente esbozados. Adicionalmente, esgrimió que la controversia era cosa juzgada, al amparo de la modalidad de impedimento colateral por sentencia. Sobre este particular, argumentó que, se radicó una querella por estos mismos hechos contra la Sra. Rivera Torres, en el caso núm. 23-41. Resaltó que, aunque se solicitó la consolidación de los casos, la misma se declaró No Ha Lugar. Hizo hincapié en que, el 10 de octubre de 2024, la propia OEG emitió "Resolución" en el caso núm. 23-41 ordenando el archivo de la querella.

Evaluada su petición, el 30 de abril de 2025,[8] la OEG emitió "Resolución en Reconsideración" y denegó la "Moción en Solicitud de Reconsideración" presentada por el recurrente. Aún insatisfecho, el Sr. Questell Alvarado recurre ante este foro apelativo intermedio señalando la comisión de los siguientes errores, a saber:

> *Primer Error: Erró la OEG al descargar completamente lo resuelto en el caso Oficina de Ética Gubernamental v. Carmen R. Rivera Torres donde concluyó que ésta última podía ejercer el cargo de Directora Interina del Departamento de Finanzas del Municipio de Santa Isabel al igual que la Resolución del FEI DI-FEI-2022-0003.*

> *Segundo Error: La OEG al violar el principio de legalidad por crear una pena por analogía al imponer la pena de restitución cuando ello únicamente está contemplado cuando la violación es el Artículo 4.2(H) de la Ley de Ética Gubernamental.*

> *Tercer Error: Erró la OEG al concluir que el Hon. Enrique H. Questell Alvarado no cumplió con los requisitos de la Ley de Municipios Autónomos para nombrar interinamente a la Sra. Carmen R. Rivera Torres como Directora Interina del Departamento de Finanzas del Municipio de Santa Isabel.*

> *Cuarto Error: Erró la OEG al imponer una pena de restitución siendo esto una pena excesiva conforme a lo resuelto en el caso normativo Timbs. v. Indiana, 586 US 146 (2019).*

El 17 de junio de 2025, la Oficina de Ética Gubernamental presentó su "Alegato en Oposición a Revisión Judicial". Con el beneficio de ambas comparecencias, procedemos a resolver.

## II.

### A.

La Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, *supra,* tiene como objetivo principal renovar y reafirmar la función preventiva y fiscalizadora que realiza la OEG. Véase Exposición de Motivos. La OEG, "fiscaliza, mediante los mecanismos y los recursos que la ley provee, la conducta de los servidores públicos y penaliza a todos aquellos que transgreden la normativa ética que integra los valores en el servicio público".

---

[8] Notificada ese mismo día.

*Pueblo v. Arlequín Vélez*, 204 DPR 117, 154 (2020). Dentro de su función preventiva, busca atacar y prevenir la corrupción del Gobierno, la conducta ilegal de los empleados públicos, los conflictos de intereses, el abuso de poder y el ejercicio de influencias indebidas. *OEG v. Rodríguez*, 159 DPR 98, 122-123 (2003). En lo pertinente, el Art. 4.2 de la precitada ley, intitulado Prohibiciones éticas de carácter general, establece en su inciso (b) que:

> *(b) Un servidor público no puede utilizar los deberes y las facultades de su cargo ni la propiedad o los fondos públicos para obtener, directa o indirectamente, para él o para una persona privada o negocio, cualquier beneficio que no esté permitido por ley.* 3 LPRA sec. 1857a.

> Por otra parte, el inciso (r) dispone que:

> *Un servidor público no puede omitir el cumplimiento de un deber impuesto por ley o reglamento, si con ello ocasiona la pérdida de fondos públicos o produce daño a la propiedad pública. Id.*

Cónsono con lo anterior, el inciso (c) del Art. 4.7 de la susodicha pieza legislativa establece los parámetros para la imposición de sanciones y penalidades. 3 LPRA sec. 1857f. Específicamente, el articulado dispone que cuando un servidor público viole las prohibiciones y disposiciones de la Ley Núm. 1-2012, *supra,* el Director Ejecutivo de la OEG esta facultado para imponer multas administrativas que no excedan los veinte mil dólares ($20,000), al igual que ordenar la restitución. *Id.*

**B.**

La derogada Ley de Municipios Autónomos de Puerto Rico,[9] Ley Núm. 81 de 30 de agosto de 1991, 21 LPRA sec. 4001 *et seq.*, vigente al momento de los hechos, disponía en su Art. 6.005 que "[t]odo municipio establecerá una Unidad Administrativa de Finanzas, la cual será dirigida por una persona que posea los

---

[9] La precitada legislación fue derogada por el Código Municipal de Puerto Rico, Ley Núm. 107 de 2020, 21 LPRA sec. 7001, *et seq.*

requisitos establecidos en el Art. 6.002 de esta ley". 21 LPRA sec. 4255. Añadía, que la persona designada para el puesto será nombrada por el Alcalde y confirmado por la Legislatura Municipal. *Id.* A esos efectos, prescribía que dicha persona deberá reunir "aquellos otros requisitos que se dispongan en el plan de puestos para el servicio de confianza que apruebe la legislatura municipal". 21 LPRA sec. 4252.

Según anticipado en el Art. 6.005, el Art. 6.002 de la Ley de Municipios Autónomos de Puerto Rico establecía el proceso de nombramiento y los requisitos que debían poseer los funcionarios municipales. Aclaraba que, "[l]os candidatos a directores de unidades administrativas de la Rama Ejecutiva del gobierno municipal estarán comprendidos dentro del servicio de confianza y sus nombramientos estarán sujetos a la confirmación de la Legislatura". 21 LPRA sec. 4252.

Indicaba, además, que los candidatos a directores de las unidades administrativas municipales nombrados por el primer mandatario municipal "deberán cumplir preferiblemente, pero no se limitará a, los requisitos mínimos de un bachillerato en la especialidad o área para la cual se le considera". *Id.* En el caso del Director de Finanzas, "deberá cumplir con el requisito mínimo de un bachillerato en la especialidad o en un área relacionada con la posición para la cual se le considera". *Id.*

Cónsono con lo anterior, el referido "Plan de Clasificación para los Empleados en el Servicio de Confianza" exigía que la persona a ocupar el puesto de Director(a) de Finanzas posea un "[b]achillerato en Administración de Empresas de una Institución Acreditada, que incluya o esté suplementado por un curso o

adiestramiento en la operación de sistemas computarizados de contabilidad.[10]

No obstante, si se dificultaba el reclutamiento de un candidato para el puesto, "el Primer Ejecutivo Municipal podrá someter a la consideración de la Legislatura Municipal otros candidatos que posean el requisito mínimo de por lo menos cuatro (4) años de experiencia en un municipio en trabajos estrechamente relacionados con las funciones que desempeñará". 21 LPRA sec. 4252. Es decir, un empleado podía ser designado por el Alcalde y aprobado por la Legislatura Municipal, y posteriormente asumir el puesto de Director de Finanzas propiamente, sin cumplir con los requisitos académicos siempre, y cuando se justificara la dificultad de reclutar una persona que reuniera las precitadas exigencias.

De elegir dicha ruta, la referida ley contemplada que, "dentro del término del primer año de su nombramiento, será requisito para permanecer en el cargo tomar un adiestramiento integral ofrecido por la Oficina Central de Administración de Personal … [Al] Director de Finanzas, se le requerirá, asimismo, tomar anualmente por lo menos un curso administrado por dicha oficina". *Id.*

## C.

Ahora bien, el proceso antes esbozado no es la única manera de designar un empleado al puesto de Director o Directora de Finanzas, pues la Ley de Municipios Autónomos, *supra*, reconocía la figura de los interinatos. La ley facultaba al Alcalde a "[n]ombrar los sustitutos interinos de los funcionarios que sean directores de unidades administrativas en caso de ausencia temporal o transitoria de éstos". 21 LPRA sec. 4109. Aclaraba, a su vez, que "[l]as personas designadas para sustituir interinamente

---

[10] Véase, anejo del recurso de "Revisión Judicial", a la pág. 227.

a tales funcionarios, podrán ser empleados de la unidad administrativa en que ocurra la ausencia". *Id.*

El Art. 11.001-A de la antedicha legislación precisaba que el interinato se caracterizaba por:

> *[L]os servicios temporeros que rinde un empleado de carrera o de confianza en un puesto cuya clasificación es superior a la del puesto para el cual tiene nombramiento oficial, en virtud de una designación escrita de parte de la autoridad nominadora o su representante autorizado **y en cumplimiento de las demás condiciones legales aplicables**.* 21 LPRA sec. 4551a. (énfasis suplido).

Nótese que, el referido artículo disponía que, para ostentar un puesto de forma interina se requería una designación oficial de la autoridad nominadora, y el cumplimiento de las condiciones legales aplicables al puesto. Condiciones que en este caso componían los requerimientos esbozados en la Ley de Municipios Autónomos*, supra,* entiéndase, preparación académica en una materia afín a la posición, o en su alternativa, cuatro años de experiencia en un municipio, en trabajos estrechamente relacionados.

Dicho esto, el propio estatuto ofrecía una segunda definición de interinato en su Art. 11.015 sobre Disposiciones sobre Retribución. 21 LPRA sec.4565. En esa ocasión, el estatuto expuso que el interinato consistía en la:

> *[S]ituación de trabajo temporera en la que el empleado desempeña todas las funciones esenciales de un puesto superior al que ocupa en propiedad. Serán requisito las siguientes condiciones: haber desempeñado las funciones sin interrupción por treinta (30) días o más; haber sido designado oficialmente a ejercer las funciones interinas por el director del departamento u oficina y **cumplir los requisitos de preparación académica y experiencia del puesto cuyas funciones desempeña interinamente.** Id.* (énfasis suplido).

Obsérvese que esta segunda definición ofrecía más detalles, e incluía los requisitos que debe cumplir una persona designada temporeramente a un puesto. Ello, pues, el Art. 11.015 establecía

las circunstancias limitadas cuando un Municipio estaba autorizado a ofrecer un diferencial como remuneración adicional.

Un diferencial, según el propio Art. 11.015 (e)(1) comprendía en "una compensación temporera especial, adicional y separada del sueldo regular del empleado, que se concede para mitigar circunstancias extraordinarias que de otro modo podrían considerarse onerosas para el empleado". *Id.* La Ley de Municipios Autónomos, asimismo, formulaba una segunda definición para dicha compensación extraordinaria, al especificar que un diferencial era "la compensación especial y adicional, separada del sueldo que se podrá conceder cuando existan condiciones extraordinarias no permanentes o cuando un empleado desempeñe un puesto interinamente". 21 LPRA sec. 4551a.

Dicho de otra manera, para recibir el diferencial el empleado que asumía un interinato tenía que cumplir con una preparación académica particular al puesto de Director(a) de la Oficina de Finanzas, según le fuese requerido en la legislación y reglamentación aplicable.

Adviértase que, aunque el interinato es definido como un escenario temporero, la Ley de Municipios Autónomos, *supra,* no fijaba un tiempo máximo de funciones para un Director de Finanzas Interino. No fue hasta que se promulgó el Código Municipal de Puerto Rico, 21 LPRA sec. 7001 *et seq,* con el propósito de derogar la Ley de Municipios Autónomos, *supra,* que se instituyó un máximo de ciento veinte días para ejercer el cargo interinamente hasta el que Alcalde designara un candidato idóneo para someter ante la confirmación de la Legislatura Municipal. 21 LPRA sec. 7152. Artículo 2.004.[11]

---

[11] Esta disposición estatutaria no afectó el proceso alterno, y excepcional, de nombramiento de candidatos que no reunieran los requisitos académicos, ya que en el Código Municipal de Puerto Rico se incluyó un procedimiento gemelo al dispuesto en el 6.002 de la Ley de Municipios Autónomos, *supra.* 21 LPRA sec. 7152.

**D.**

En nuestro ordenamiento jurídico, las decisiones de las agencias administrativas están revestidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 893 (2008). Lo anterior se fundamenta en el conocimiento especializado y la experiencia sobre la materia que su ley habilitadora les confiere. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 436 (1997); *Misión Ind. P.R. v. J.P. y A.A.A.,* 142 DPR 656, 672-673 (1997). Por lo que, en virtud de nuestro ejercicio de revisión judicial, le debemos gran deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Depto. Corrección,* 208 DPR 656, 673-674 (2022); *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021).

Ahora bien, dicha deferencia no constituye un dogma inflexible que impida nuestra intervención. A tenor con lo anterior, recientemente, nuestro Tribunal Supremo tuvo la oportunidad de examinar en *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros,* 2025 TSPR 56, 215 DPR ___ (2025) la deferencia que los foros judiciales le deben otorgar a las conclusiones de derecho provistas por las agencias administrativas. Allí, nuestra Alta Curia resolvió que la deferencia que los foros judiciales le deben a las conclusiones e interpretaciones que llevan a cabo las agencias no equivale a una renuncia de nuestra función revisora. *Id.* a la pág. 32. Lo anterior, debido a que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. *Id.*

Así dictaminado, el Alto Foro destacó que "al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la

deferencia automática ... sino que por los mecanismos interpretativos propios del Poder Judicial". *Id.*

**III.**

Resulta meritorio precisar que ante nuestra consideración se encuentra la determinación emitida por la OEG en el caso del Sr. Questell Alvarado. No obstante, para realizar nuestro análisis debemos adentrarnos en los detalles relacionados al interinato de la Sra. Rivera Torres. Ello responde a que ambos casos comparten el mismo núcleo de hechos, mas no las mismas imputaciones éticas, según se desprende de nuestro resumen del tracto procesal.[12] Dicho lo anterior, puntualizamos que no estaremos atendiendo ni revisando el caso de la Sra. Rivera Torres puesto que no es la controversia que nos ocupa.

Como ya explicamos, la OEG dictó "Resolución" en la que concluyó que el Sr. Questell Alvarado utilizó sus facultades para nombrar como Directora Interina del Departamento de Finanzas a la Sra. Rivera Torres y otorgarle un diferencial por su labor, aun cuando esta última incumplía con los requisitos legales para ocupar dicho puesto. Por ese motivo, dictaminó la OEG que el diferencial que el municipio le pagó a la Sra. Rivera Torres por ejercer interinamente dicho puesto no estaba permitido por ley. En consecuencia, la agencia recurrida concluyó que el recurrente violentó los incisos (b) y (r) del Art. 4.2 de la Ley de Ética Gubernamental de Puerto Rico, *supra*, y le impuso el pago de $51,308.80 en concepto de multa administrativa y pena de restitución.

Primeramente, colegimos que la OEG acertadamente concluyó que la Sra. Rivera Torres no reunía los requisitos académicos para recibir una remuneración adicional por la labor

---

[12] Empero, ello no significa que estemos revisando la querella administrativa instada contra la Sra. Rivera Torres, la cual fue archivada.

que realizaba de manera interina. Por ser este el estado de derecho, la parte recurrida tampoco erró en resolver que el Sr. Questell Alvarado, en su función como servidor público, obtuvo para un tercero un beneficio no contemplado por ley, infringiendo así el inciso (b) del Art. 4.2 de la Ley Orgánica de la Oficina de Ética Gubernamental, *supra.*

Empero, no podemos concluir, como hizo la OEG, que el recurrente cometió una violación al inciso (r) de la susodicha pieza legislativa. Nos explicamos.

Acorde a nuestra exposición de derecho, el texto del referido inciso establece que: "[u]n servidor público no puede omitir el cumplimiento de un deber impuesto por ley o reglamento, si con ello **ocasiona la pérdida de fondos públicos** o produce daño a la propiedad pública", *supra.* (énfasis nuestro). Siendo ello el texto de la conducta imputada, no podemos sostener que el desembolso del diferencial constituyó una pérdida de fondos públicos.

Vemos una clara distinción entre la adecuacidad o corrección legal del otorgamiento de un beneficio, y la conclusión de que el desembolso inoportuno de tal beneficio constituyó una pérdida de fondos públicos, máxime cuando se cumplió con la labor para la cual se designó el dinero. Recordemos que no surge del expediente que se haya impugnado el trabajo que realizó la Sra. Rivera Torres como Directora Interina de la Oficina de Finanzas. El anterior análisis de la OEG sugiere una falta de cohesión en los incisos imputados al Sr. Questell Alvarado.

Añadimos al anterior análisis la incompatibilidad del inciso (r) con la pena de restitución ordenada. No podemos avalar la imposición de un pago de $47,308.80 a una persona que no se benefició del dinero desembolsado, especialmente cuando concluimos que el desembolso del diferencial no constituyó una

pérdida de fondos públicos. Lo contrario constituiría una grave injusticia.[13]

En cuanto a la multa administrativa impuesta, se elimina la cuantía correspondiente al inciso (r) del Art. 4.2 de la Ley Orgánica de la Oficina de Ética Gubernamental, *supra*, ya que resolvimos que el Sr. Questell Alvarado no infringió la disposición aludida.

Por otra parte, este Tribunal está en posición de reducir la cuantía impuesta por la violación al inciso (b) de la referida pieza legislativa. Dictaminamos lo anterior pues no advertimos que de la gestión del recurrente se desprendiera conducta constitutiva de delito, o que mediara intención de defraudar el erario municipal. Al contrario, según vimos, el Sr. Questell Alvarado nombró una servidora pública con extensa experiencia laborando para la Oficina de Finanzas del Municipio de Santa Isabel, y que, a todas luces, cumplía con las cualificaciones para ser nombrada al puesto de Directora en propiedad, según el procedimiento alterno que disponía el Artículo 6.002 de la Ley de Municipios Autónomos, *supra.* En consecuencia, reducimos la multa administrativa correspondiente al inciso (r) de $2,000 a $250.

### IV.

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, se revoca en parte la "Resolución" recurrida, emitida por la Oficina de Ética Gubernamental, a los fines de eliminar la cuantía de $47, 308.80 en concepto de pena de restitución. Por otro lado, modificamos en parte el dictamen recurrido, para reducir la multa administrativa impuesta al señor Enrique H. Questell Alvarado, a la cuantía de $250.00.

---

[13] Se nos informó en el alegato de la OEG, que la querella instada contra la señora Rivera Torres se archivó ya que se determinó que, para ejercer un puesto de manera interina, no era necesario cumplir con los requisitos del puesto en propiedad. No obstante, desconocemos la razón por la cual la OEG no le imputó a la Sra. Rivera Torres aceptar fondos públicos no contemplados en ley, y el pago de la pena de restitución, cuando la otorgación del diferencial estaba condicionada al cumplimiento de requisitos estatuidos que ella no satisfacía.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Adames Soto disiente sin voto escrito.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones